HAUTERMAN & VAN LAUDEGAM *v.* FERDINAND BOCK, *impleaded with* FERDINAND HARTOG *and* MAURICE VALKENHUYSEN.

The right of a shipper to revoke a consignment after the shipment has been made, and a bill of lading signed, by which the goods are deliverable to a consignee by name, but before the bill of lading is delivered to the consignee, cannot be questioned either on principle or authority.

Until the bill of lading is parted with, no title to the property passes from the owner or shipper, nor does any right to the possession or ownership of the goods vest in the consignee.

The production of the bills of lading by plaintiffs, the possession of which they had never parted with, proves conclusively that they were the shippers and owners. The bill is regarded as a muniment of title to the property described in it.

Goods in public store awaiting the completion of their entry at the Custom House by the payment of the duties, are to be deemed still *in transitu.*

Hauterman v. Bock.

APPEAL by the defendants from a judgment at Trial Term. The case was tried before Daly, First Judge.

On the trial it appeared that the plaintiffs shipped at Antwerp, in Belgium, on board the steamer Belgique, nineteen cases of segars, taking from the master of the vessel bills of lading, making the segars deliverable to the defendants, Hartog & Valkenhuysen, at New York, to which port the steamer was bound. Before her arrival, and on June 5, 1857, Hartog & Valkenhuysen failed, and made an assignment for the benefit of their creditors to the defendant Bock. The bills of lading were never transmitted to, and never came to the possession of either of the defendants, but the segars on their arrival were sent by the officers of the Customs to the public store, and the defendant Bock claiming their possession under the assignment, the plaintiffs brought this action for the purpose of having themselves declared the sole owners of and entitled to the segars, notwithstanding such claim.

At the trial, the bills of lading being still in the plaintiffs' possession were by them produced and put in evidence, and they showed in addition that a notice claiming that the segars had been stopped by them in *transitu*, was served on the Collector of the Port, and also upon the captain and agent of the steamer, prior to the commencement of this suit.

Upon these facts, judgment was given at the Special Term declaring the plaintiffs to be the owners and entitled to the immediate possession of the segars, and that they had a right to stop the same *in transitu*.

*H. C. Van Vorst*, for appellant.

I. The right of stoppage *in transitu* exists only between vendor and vendee, or between persons standing substantially in that relation. It is only where the consignor is virtually the vendor that he may exercise the right. (2 Kent's Comm., 702; 1 Parsons on Contr., 481.) (1.) *Consignors* are not necessarily owners, and proof of the former relation is not proof of the latter. In this case the bills of lading express an unqualified consignment; and the legal presumption is, that the *consignees* are the owners. (2.) It was for the plaintiffs to give evidence to rebut this legal presumption. (*Everett* v.

*Saltus*, 15 Wend., 474, 20 Wend., 267; Angell on Com. Car., § 497, 2d Ed.; *Price* v. *Powell*, 3 N. Y., 322.)

II. The right of stoppage *in transitu*, exists only where goods have been sold upon credit. (2 Kent's Com., 702, and cases there cited.)

III. The notice of stoppage *in transitu* must be made by the agent, general or special, of the owner, or if made by a stranger, there must be a subsequent ratification thereof on the part of the vendor. (1 Parsons on Contr., 478.)

*Charles L. Spilthorn* and *John B. Fogarty*, for respondents.

I. The shippers or consignors of goods have the right previous to delivery, of stoppage in *transitu* on the happening of the failure or insolvency of consignees. (Abbott on Shipping, Ed. Lond. 1844, 335, 511; Flanders on Shipping, 464, 466, 519; *Dows* v. *Cobb*, 12 Barb., 310, 316.) (1.) The delivery to the consignee is not complete while the goods are in the Custom House before payment of the duties, or until they are actually in the possession, store or place of deposit of the consignees. (Flanders, 528, 529; Belgian Code of Commerce, Article 568; Abbott, 513, 521.) (2.) The consignors or shippers are presumed *prima facie* to be the owners of goods consigned by them. (Flanders, 464; Abbott, 321.) (3.) The bill of lading is conclusive proof that the respondents were the shippers, and is presumptive proof that they were the owners and consignors. (Abbott, 328; Flanders, 450, 456.)

II. The exercise of the right of stoppage in *transitu* by the respondents so far as was then possible, is proved by the service of notice thereof on the consignee, the master of the vessel and the Collector of the Port. (1.) The respondents could not have then exercised their rights in any other manner. (2.) It is sufficient if the party having the right to stop goods in *transitu*, take such steps as evince his intention to do so; the law will not require impossibilities. (Abbott, 528; Flanders, 541.) (3.) The sale on credit is to be presumed until payment is shown; the *onus probandi* is on the appellants. The respondents cannot be required to prove a negative.

Hauterman v. Bock.

By the Court.—Hilton, J.—This judgment was clearly right. The defendants failed to show any title whatever to the segars, while on the other hand the plaintiffs proved conclusively by the production of the bills of lading, the possession of which they had never parted with, that they were the shippers and owners of the property claimed. The right of a shipper to revoke a consignment, after the shipment has been made and a bill of lading making the goods deliverable to a consignee by name has been signed, and before the bill of lading is delivered to the consignee, cannot be questioned either on principle or authority, because, until the bill of lading is parted with, no title to the property, nor any right to the possession or ownership, passes from the owner or shipper. (*Abbott on Shipping*, [7 Am. ed.] 433.)

By inserting the names of the defendants as consignees, they derived no property in the segars or title or interest in them nor any right to their possession, until effect was given to the act by delivery to them of the bills of lading, by the plaintiffs or some one on their behalf, and by their authority. The plaintiffs certainly had the right to direct the consignment, and might have named the defendants as consignees in anticipation of making some intended negotiation respecting the segars; but whether this be so or not it is manifest that they never carried into effect their intent at the time of the shipment, by delivering or transmitting the bills of lading to the defendants. (*Lickbarrow* v. *Mason*, 2 Term R., 71; *Hibbert* v. *Carter*, 1 Id. 747; *Buffington* v. *Curtis*, 15 Mass., 526.; *Low* v. *Wolf*, 8 Pick. 301; *Allen* v. *Williams*, 12 Id. 297.) It is frequently the case that the name of the consignee is left blank in the bill, and it would be absurd to say when goods are thus shipped that the mere insertion of a name in the blank thus left would divest the owner of his title and control over them.

By the law merchant the bill is regarded as a muniment of title to the property described in it, (1 Parsons on Maritime Law, 358,) and when it is in the possession of the consignee he is presumed to be the owner, (*Everett* v. *Saltus*, 15 Wend., 474; affirmed 20 Wend. 267,) but no such presumption in favor of the consignee attaches to a bill found in the possession of the shipper. (*Abbott on Shipping*, [7 Am. Ed.] 435, 669, 654.)

Hauterman v. Bock.

Upon these views it is unnecessary to inquire whether the notice referred to was sufficient to predicate ·the claim of the plaintiffs to stop the goods.   But in any aspect, it seems to me the motive would not be a matter for material consideration, as it appeared at the trial that the goods had not up to that time come to the actual or constructive possession of the defendants.   As is said by Chancellor Walworth in *Mottram* v. *Heyer*, (5 Denio, 631 ): " The removal of the goods from the " vessel to the public store by the Custom House Officers " until the consignee should entitle the owners to claim the " possession and disposition of the goods by completing their " entry by the payment of the duties, was merely substituting " the public store in the place of the vessel as a *place of deposit* " *in the transmission* of the goods to their place of destina- " tion."

Here there was no evidence that the defendants had ever entered the goods at the Custom House, or paid any duties upon them.   Therefore the public store was to be regarded as a place of deposit connected with the transmission, and it is well settled that as to goods thus deposited the right of a consignor to stop *in transitu* attaches. (*Mottram* v. *Heyer*, supra., *Buckley* v. *Furniss*, 15 Wend. 137; *Cornell* v. *Hitchcock*, 23 Id. 611; *Abbott on Shipping* [7 Am. Ed.] 664; *Northey* v. *Field*, 2 Esp., N. P. C. 613 ; 1. Parson's Maritime Law, 352.) The consignee having no right to the goods until he pays the duties, it cannot be said when such payment has not been made, that he has ever acquired either actual or constructive possession of them.

Judgment affirmed.